L. J. S. Brody v. Commissioner.
L. J. S. Brody v. Commissioner
Docket No. 4085.
United States Tax Court
1945 Tax Ct. Memo LEXIS 169; 4 T.C.M. (CCH) 595; T.C.M. (RIA) 45194; June 7, 1945
Percy W. Phillips, Esq., for the petitioner. Clay C. Holmes, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: This proceeding involves deficiencies in income taxes for 1937, 1938 and 1939 in the respective amounts of $14,307.42, $4,303.07, and $4,339.95. The issue is whether petitioner is taxable on the income of a trust created by him on October 31, 1936. Findings of Fact The petitioner is an individual residing in New Canaan, Connecticut. His returns for the taxable years were filed with the collector for the district of Connecticut. On October 31, 1936, petitioner executed an irrevocable declaration of trust for 3,000 shares of stock of United Verde Extension Mining Co., and 200 shares *170 of preferred stock of the Yellow Coach Truck & Manufacturing Co. He named himself trustee to hold, manage, invest and reinvest the corpus and accumulate the net income therefrom during his life as principal of the trust. Upon his death, his wife surviving him, the income of the trust was to be distributed to his wife during her life. Upon her death, or upon the death of petitioner, in the event she predeceased him, the corpus, including all accumulations of income as corpus, was to be distributed to the lawful issue of petitioner, and if no such issue, to those persons who would be entitled to take under the laws of Connecticut if he had died intestate without a surviving wife. The trustee was authorized to invest and reinvest trust property in any kind of real or personal property, and to participate in any reorganization, consolidation, merger or other capital readjustment of any corporation whose stock was owned by the trust, with the same power he would possess if he were the individual owner of the property. He was also authorized to exercise conversion or subscription rights relating to any of the securities held by the trust or sell such rights, any investment made through *171 the exercise of such rights to be considered principal of the trust. The trustee was prohibited from establishing a sinking fund to amortize the premiums at which any investment or reinvestment might be purchased, received or held. For convenience of administration or to facilitate the transfer of securities the trustee was authorized to cause property of the trust to be registered in his name or a nominee, or hold securities in a bearer form so that they would pass by delivery. The trustee was not required to furnish a bond and was not to be liable for any loss resulting from errors of judgment in the making of any sale, investment or reinvestment, or continuing to hold any property of the trust. The trustee was authorized to vote stock in person or by proxy. Either the petitioner or any other person could make additions to the trust estate but in the event additions were made by other than petitioner while he was acting as trustee, the trustee or trustees were not obligated to accept the additional property if it was not satisfactory to them. The petitioner reserved the right to resign as trustee and appoint a successor trustee or trustees to act in his place in the event *172 of his resignation or death; also to change during his lifetime his designation of a trustee or trustees to act after his death. In the event any successor trustee resigned or otherwise ceased to act, the petitioner was authorized to appoint a successor trustee or trustees. He also reserved the right, during his lifetime, to associate with himself as trustee another trustee or trustees, in which event petitioner and his co-trustee or co-trustees were to have the same powers as petitioner reserved to himself as trustee. The powers reserved by petitioner to himself as trustee were granted to any other trustee or trustees who might at any time act as such under the instrument. The provision in the trust instrument for the accumulation of income as corpus was inserted at the suggestion of counsel for petitioner in view of their belief that if the income was made distributable to petitioner's wife during his lifetime, the income might be held to be taxable to petitioner upon the ground that it relieved him to that extent of this liability for support. Petitioner was able to support his wife without income from the trust. By instruments executed on January 9, 1937, petitioner irrevocably *173 added other shares of stock to the corpus of the trust and appointed an individual and a banking corporation to act as trustees of the trust in the event of his death. On or about the date of the execution of the declaration of trust and the instrument adding corpus thereto, the petitioner delivered a duplicate original copy of each instrument to his wife. At the time the trust was created, the petitioner was married but had no children. Petitioner and his wife now have a son about five years of age. The petitioner filed gift tax returns for the original corpus of the trust and addition made thereto. All of the securities of the trust were registered in the name of Louis Brody, the petitioner. The securities owned by petitioner in his individual capacity were registered in the name of L. J. Stephen Brody. The securities held as corpus of the trust were at all times kept in a safe deposit box in petitioner's name, in New Canaan, Connecticut, in an envelope bearing an indorsement of petitioner that the contents belonged to the trust. Petitioner was the only one who had access to the box and he did not keep any of his own securities in the box. Enclosed in the envelope was a statement *174 signed "Louis Brody" and "Louis J. S. Brody" reading as follows: "To Whom It May Concern: "This is to certify that all these securities standing in my name, namely Louis Brody or Louis J. S. Brody, are the property of The Louis J. S. Brody Trust created for the benefit of Elizabeth Hammond Brody and others in 1936. I have no interest whatever therein, the certificates being in my name merely as nominee. All dividend payments and so forth are the property of The Trust." Transfer agents will not issue stock in the name of a trustee without examination of the instrument under which the trustee is acting. It is customary for banks and trustees to register securities of trusts in the name of a nominee to avoid this inconvenience. The petitioner inserted a provision in the trust involved herein authorizing the trustee to hold property of the trust in his own name or the name of a nominee to avoid delay and inconvenience in the administration of the trust. Petitioner specialized in economics and finance in college and later held positions as a bond salesman and resident manager of branch offices of a New York Stock Exchange firm and was the senior member of a partnership having a *175 member who held a seat on the New York Stock Exchange. The partnership was dissolved in 1931 on account of illness of the petitioner. He was connected with a stock brokerage firm from 1932 until 1934, when he retired from business. Since then, he has devoted most of his time analyzing securities, frequently as a favor to friends. The petitioner named himself trustee of the trust rather than a bank because he felt that he could give it more attention and had had more experience in dealing in securities than the average trust officer of a bank, and due to the tendency of banks acting as trustees to invest trust funds in bonds providing a fair return rather than in common stock, a type of security petitioner believed gave greater protection to capital during inflationary periods. Purchases of securities for the trust were made for cash and the petitioner, as trustee, at all times endeavored to acquire stock that was paying or would pay, good dividends. He never engaged in marginal transactions. Sales of securities of the trust were made through a brokerage firm in an account designated "Louis J. S. Brody Account No. 2." Petitioner signed a statement on January 18, 1937, stating *176 that the account was the property of the trust and placed the certificate in the envelope with the securities in the safe deposit box maintained in New Canaan, Connecticut. The petitioner maintained a separate bank account for the trust in the Irving Trust Co., New York City, called the Louis J. S. Brody Account No. 2. The envelope in petitioner's safe deposit box in New Canaan, Connecticut, in which the securities of the trust were placed, contained a statement signed by the petitioner that the account belonged to the trust. All of the funds of the trust were kept in the account and no other money was ever deposited in the account. The check book kept for the account contained a notation signed by petitioner that the checking account was the property of the trust involved herein. All of the personal securities of the petitioner were kept in a custodian account with the Central Hanover Bank, New York City, in the name of L. J. Stephen Brody. All securities purchased for petitioner's personal account were delivered to that bank and kept there by it. The petitioner kept ledger sheets for his personal investments separately from the trust. The books for both were kept by petitioner *177 in his home. There was never any dealings between petitioner, as an individual, and himself as trustee of the trust. There may have been occasions when petitioner bought the same type of securities for himself and the trust at the same time. Petitioner was not an officer or a director of any corporation in which the trust held stock. The trust did not at any time hold as much as one per cent of the outstanding stock of any one company. The petitioner never owned a controlling stock interest in any corporation in which trust funds were invested. The ownership of securities by the trust did not give petitioner a financial advantage of any kind, or give him influence with any company which he would not otherwise have had. Opinion The respondent contends upon brief that the income of the trust is taxable to petitioner under section 22 (a) of the applicable revenue acts within the rationale of . The trust involved in the Clifford case was for a term of five years and upon its termination at such time the corpus was to go to the grantor-trustee and any accrued or undistributed income was distributable to his wife. During the life of *178 the trust the grantor, as trustee, could exercise his own discretion on the amount of trust income he distributed to his wife, the beneficiary. The grantor gave himself broad powers of management of the trust property, including the holding of securities in his own name as an individual, and protected himself against liability for losses of the trust due to his acts, except wilful and deliberate breaches of trust. Whether trust income is taxable to the grantor under section 22 (a) upon the theory that he continued to be in substance the owner, must be found from the provisions of the trust and attendant circumstances. The trust here contains some of the features of the Clifford trust. For instance, petitioner retained as trustee, and conferred upon successor trustees, powers of investment and reinvestment equal to those possessed by an individual owner; endeavored to limit his liability for loss incurred by the trust from his management of its affairs. Other features of the instant trust have no counterpart in the Clifford trust. The trust, instead of for a short term, was to continue during the lifetime of the survivor of the grantor and his wife without power of revocation; the *179 income of the trust was not subject to distribution to anyone during the taxable years for any purpose but had to be accumulated as corpus for distribution upon the termination of the trust to issue of petitioner, and in the absence of such issue, to heirs of the grantor under the intestacy laws of Connecticut. There was, under the circumstances, no "temporary reallocation of income within an intimate family group" as in the Clifford case. . The unlimited power retained by the petitioner to invest and reinvest trust property, is not of itself enough to make the income of the trust taxable to him under section 22 (a). : , ; ; affirmed ; , affirmed ; ; . The petitioner was neither officer nor director of any company in which the trust owned *180 any stock, nor did he have controlling stock interest in any company in which funds of the trust were invested; and the respondent does not contend that petitioner had such control of any company, stock in which constituted trust corpus. No provision was made in the declaration of trust for reversion of corpus to petitioner under any circumstances. Without any right to receive income or corpus of the trust, petitioner was not, under the facts here, in a position to derive economic benefit from any of the powers reserved by him in the trust instrument. ; . The power reserved by petitioner to register securities of the trust in his own name was for the purpose of convenience in the administration of the trust, and is not unusual, . The income of the trust is not taxable to petitioner under the provisions of section 22 (a). Accordingly, the issue is decided in favor of the petitioner. Decision will be entered under Rule 50.